# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

SUSEL HERNANDEZ,

       Plaintiff,                CASE NO.:

    v.                       JURY TRIAL DEMANDED

FIRMO CONSTRUCTION, LLC,

       Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, SUSEL HERNANDEZ ("Plaintiff" and/or "Ms. Hernandez"), by and through her undersigned counsel, hereby complains of Defendant, FIRMO CONSTRUCTION, LLC ("Defendant" and/or "Firmo"), and alleges as follows:

## INTRODUCTION

1. This case involves a pregnant female employee who was unlawfully discriminated against and retaliated against by her employer on the basis of her pregnancy and sex.

2. Ms. Hernandez brings this action against Defendant pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"), the Pregnant Workers Fairness Act, 42 U.S.C. § 2000gg ("PWFA"), and the Florida Civil Rights Act of 1992, § 760.01, Florida Statutes ("FCRA").

## PARTIES

3.     Ms. Hernandez is an individual female residing in the State of Florida.

4.     Defendant is a Florida Limited Liability Company, with its principal place of business located at 205 N. Orange Ave, Suite 301, Sarasota, Florida 34236.

5.     At all times material, Ms. Hernandez was employed by Defendant.

6.     The exact number of Defendant's employees is unknown, but upon information and belief, there are well more than the statutory minimum under Title VII, the PWFA, and the FCRA.

7.     At all times material, Defendant was an "employer" within the meaning of 42 U.S.C. § 2000e(b).

8.     At all times material, Defendant was a "covered entity" within the meaning of 42 U.S.C. § 2000gg(2).

9.     At all times material, Plaintiff was an "employee" within the meaning of 42 U.S.C. § 2000gg(3), and a "qualified employee" within the meaning of 42 U.S.C. § 2000gg(6).

10.     At all times material, Defendant was a "person" within the meaning of § 760.02(6), Florida Statutes, and an "employer" within the meaning of § 760.02(7), Florida Statutes.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1367. This action is authorized and instituted pursuant to 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 2000gg-2(a).

12.     Venue is proper in this district pursuant to 28 U.S.C. §1391(b) because the unlawful employment practices alleged below were committed within the jurisdiction of the United States District Court for the Middle District of Florida. The Defendant was and is still located in this judicial district and a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## ADMINISTRATIVE PREREQUISITES

13.     Ms. Hernandez has complied with all administrative requirements to file this action.

14.     On or around September 21, 2023, Ms. Hernandez timely dual-filed a charge of discrimination (Charge No. 511-2023-03916) against Defendant with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR").

15.     On or around January 30, 2024, the EEOC issued Ms. Hernandez's Notice of Right to Sue against Defendant.

16.    Ms. Hernandez is timely commencing this action within ninety (90) days of receipt of the EEOC's Notice of Right to Sue.

## **FACTUAL ALLEGATIONS**

17.    In or around January 27, 2021, Ms. Hernandez was hired by Defendant as a Construction Bookkeeper.

18.    At all times material, Ms. Hernandez was an individual pregnant female and was therefore a protected class member.

19.    At all times material, Ms. Hernandez was considered an exemplary employee. Ms. Hernandez had a history of positive performance and received multiple pay raises during her employment with Defendant.

20.    In or around October of 2022, Ms. Hernandez informed Defendant of her pregnancy.

21.    In or around February of 2023, Ms. Hernandez began to experience medical complications related to her pregnancy.

22.    Due to her complications, Ms. Hernandez's physician recommended that she work remotely from mid-February to March.

23.    On or around February 13, 2023, Ms. Hernandez shared her medical documentation with Sheyla Ladd ("Ladd"), an individual female who was employed by Defendant as Human Resources Manager, and requested that she be able to work from home temporarily.

24.    At all times material, Ladd held supervisory authority over Ms. Hernandez, including the power to hire, fire, demote, and promote Ms. Hernandez.

25.    Ladd granted Ms. Hernandez's request for the pregnancy-related accommodation.

26.    In or around April of 2023, Ms. Hernandez returned to working in the office. Ms. Hernandez continued to work in the office until the start of her maternity leave at the end of May.

27.    On or around May 29, 2023, Ms. Hernandez gave birth to her child and began her maternity leave with Defendant.

28.    During her maternity leave, Ms. Hernandez stayed in contact with Defendant, with her speaking to Ladd approximately every other week.

29.    Despite being on maternity leave, Ms. Hernandez offered to complete tasks for Defendant. By means of example, during her leave, Ms. Hernandez paid annual property taxes on behalf of Defendant.

30.    On or around July 12, 2023, Ms. Hernandez spoke with Ladd via telephone to discuss her return to work. During the call, Ms. Hernandez requested a pregnancy-related accommodation from Defendant.

31.    Specifically, Ms. Hernandez asked if, upon her return, she could either work remotely on certain days of the week, or alternatively, that she be allowed to bring her child to the physical office.

32.     In response, Ladd stated she would relay the request to Maegan Ochoa ("Ochoa"), an individual female employed by Defendant as Vice President, and that Ms. Hernandez could discuss the request in further detail with Ochoa.

33.     At all times material, Ochoa held supervisory authority over Ms. Hernandez, including the power to hire, fire, demote, and promote Ms. Hernandez.

34.     On or around July 17, 2023, Ms. Hernandez spoke with Eric Collin ("Collin"), an individual male who was employed by Defendant as President and Owner.

35.     At all times material, Collin held supervisory authority over Ms. Hernandez, including the power to hire, fire, demote, and promote Ms. Hernandez.

36.     During Ms. Hernandez's conversation with Collin, she requested to return to work on August 15, 2023, rather than the originally scheduled return date of August 29, 2023, as she was eager to return to work.

37.     In response, Collin briefly asked about Ms. Hernandez's child, but otherwise did not address Ms. Hernandez's request.

38.     Later that day, Ms. Hernandez received a text message from Ladd asking Ms. Hernandez to meet with Ochoa so that Ochoa could meet Ms.

Hernandez's child and to discuss some work items. Ms. Hernandez agreed to meet with Ochoa the next day.

39.     On or around July 18, 2023, Ms. Hernandez met Ochoa and Ladd at a local market.

40.     During the meeting, Ochoa began by asking about Ms. Hernandez's child and how they were doing.

41.     Shortly thereafter, Ochoa started explaining that this was going to be "the hardest conversation" that she has ever had and informed Ms. Hernandez that she was being terminated from her employment.

42.     Ms. Hernandez was shocked and extremely upset at the news of her termination. Ms. Hernandez had given her time and efforts to Defendant and was being terminated at her most vulnerable, while she was on maternity leave and having just given birth to her child.

43.     Ochoa went on to justify the unlawful termination, stating it was "nothing personal" and that it was "for the good of the business."

44.     When Ms. Hernandez pressed Ochoa for an explanation for her termination, Ochoa responded by callously stating "when you started the company was a $1 million dollar company and now we are a $20 million dollar company."

45.     The meeting concluded with Ochoa and Ladd informing Ms. Hernandez that they would gather her personal belongings from the office and return them to her.

46.     On or around July 19, 2023, Ladd visited Ms. Hernandez's house to drop off her personal belongings.

47.     During the visit, Ladd also offered Ms. Hernandez a severance agreement to release all claims against Defendant. As part of the agreement, Ms. Hernandez would be required to submit a resignation letter.

48.     When Ms. Hernandez asked Ladd if she would receive a letter of recommendation from Defendant, Ladd agreed to give her the recommendation.

49.     Ladd pressured Ms. Hernandez to sign the agreement that day, but Ms. Hernandez refused and requested that she be given time to review the agreement before signing.

50.     Ladd continued to ask Ms. Hernandez to sign the agreement several times after meeting with her.

51.     The events described above are just some of the examples of unlawful discrimination and retaliation that Defendant subjected Ms. Hernandez to on a continuous and on-going basis throughout her employment.

52.     Defendant unlawfully discriminated against Ms. Hernandez because of her sex and pregnancy.

8

53. Defendant failed to reasonably accommodate Ms. Hernandez's pregnancy-related accommodation requests as required by law.

54. Defendant retaliated against Ms. Hernandez for exercising her maternity leave benefits and for requesting pregnancy-related accommodations.

55. Ms. Hernandez claims a continuous practice of discrimination and claims continuing violations and makes all claims herein under the continuing violations doctrine.

56. At all times material, Defendant's employees were acting as agents of Defendant in their unlawful treatment of Ms. Hernandez.

57. At all times material, Defendant acted with deliberate indifference to the unlawful treatment complained of herein.

58. As a result of Defendant's actions, Ms. Hernandez felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

59. As a result of the acts and conduct complained herein, Ms. Hernandez has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits, and other compensation which such employment entails, and Ms. Hernandez has also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Ms. Hernandez has further experienced severe emotional and physical distress.

60.     Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, so as to support and justify an award of punitive damages against Defendant.

61.     Defendant is either directly or vicariously liable for the unlawful conduct complained of herein.

**CAUSES OF ACTION**
**COUNT I**
**42 U.S.C. § 2000e-2**
*Sex Discrimination*

62.     Ms. Hernandez reincorporates the factual allegations in Paragraphs 17 through 61.

63.     Title VII provides, in relevant part, that "it shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of his race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

64.     Title VII further provides that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

65.    Title VII defines "because of sex" and "on the basis of sex" to include discrimination on the basis of "pregnancy, childbirth, or related medical conditions" and requires that "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes." 42 U.S.C. § 2000e(k).

66.    Ms. Hernandez was an individual female and was therefore a protected class member.

67.    The elements of a prima facie case of disparate treatment are flexible and are tailored on a case-by-case basis to differing factual circumstances.

68.    Defendant subjected Ms. Hernandez to discriminatory treatment on the basis of her sex, including but not limited to, unlawfully terminating Ms. Hernandez's employment.

69.    Defendant targeted Ms. Hernandez because she was pregnant and because she exercised her maternity leave benefits. No similarly situated male employees endured the discriminatory conduct that Ms. Hernandez was forced to endure.

70.    The discriminatory actions of the Defendant against Ms. Hernandez, as described and set forth above, constitute an adverse employment action for the purposes of Title VII.  In subjecting Ms. Hernandez to adverse employment actions, the Defendant intentionally discriminated

against Ms. Hernandez with respect to the compensation, terms, conditions, or privileges of her employment.

71.    As a direct and proximate result of the Defendant's intentional discriminatory conduct in violation of Title VII, Ms. Hernandez has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Ms. Hernandez has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages Ms. Hernandez accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

72.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Ms. Hernandez's rights under Title VII, warranting the imposition of punitive damages, in addition to compensatory damages.

73.    The conduct of the Defendant deprived Ms. Hernandez of her statutory rights guaranteed under Title VII.

74.    Ms. Hernandez further requests that her attorney's fees and costs be awarded as permitted by law.

## COUNT II
### 42 U.S.C. § 2000e-3
### *Retaliation*

75.     Ms. Hernandez reincorporates the factual allegations in Paragraphs 17 through 61.

76.     Title VII prohibits retaliation in any manner against a person who has opposed a discriminatory practice, or who has participated in any investigation, proceeding or hearing related to an unlawful discriminatory practice. 42 U.S.C. § 2000e-3(a).

77.     Ms. Hernandez was an individual female and was therefore a protected class member.

78.     Ms. Hernandez engaged in a protected activity when she informed Defendant of her pregnancy and exercised her maternity leave benefits.

79.     In response to Ms. Hernandez asserting her right to enjoy the same employment benefits as every other employee, the Defendant retaliated against Ms. Hernandez.

80.     Defendant retaliated against Ms. Hernandez by engaging in conduct, including but not limited to, unlawfully terminating Ms. Hernandez's employment.

81.     Defendant took the above-mentioned materially adverse actions, among others, against Ms. Hernandez because of her protected activities.

82.     Any reasonable employee in Ms. Hernandez's position would be dissuaded from opposing discriminatory conduct if they knew that they would be subjected to the kind of treatment that Ms. Hernandez was forced to endure.

83.     Defendant's alleged bases for its adverse employment actions against Ms. Hernandez are pretextual and have been asserted only to cover up the retaliatory nature of Defendant's conduct.

84.     As a direct and proximate result of the Defendant's retaliatory conduct in violation of the Title VII, Ms. Hernandez has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Ms. Hernandez has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages Ms. Hernandez accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

85.     Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of the Ms. Hernandez's rights under Title VII, warranting the imposition of punitive damages in addition to compensatory damages.

86.     The conduct of the Defendant deprived Ms. Hernandez of her statutory rights guaranteed under Title VII.

87.    Ms. Hernandez further requests that her attorney's fees and costs be awarded as permitted by law.

### COUNT III
### 42 U.S.C. § 2000gg-1
### *PWFA Discrimination*

88.    Ms. Hernandez reincorporates the factual allegations in Paragraphs 17 through 61.

89.    The PWFA provides that it is unlawful for an employer to not make reasonable accommodations to the known limitations related to the pregnancy, childbirth, or related medical conditions of a qualified employee, unless the employer can demonstrate that the accommodation would impose an undue hardship. 42 U.S.C. § 2000gg-1(1).

90.    The PWFA further provides that it is unlawful for an employer to deny employment opportunities, or to take an adverse action in the terms, conditions, or privileges of employment, against a qualified employee on account of the employee requesting or using a reasonable accommodation to the known limitations related to the pregnancy, childbirth, or related medical conditions of the employee. 42 U.S.C. §§ 2000gg-1(3), (5).

91.    A known limitation under the PWFA includes any physical or mental condition related to, affected by, or arising out of pregnancy, childbirth, or related medical conditions. 2 U.S.C. § 2000gg(4).

92.    The elements of a prima facie case of disparate treatment are flexible and are tailored on a case-by-case basis to differing factual circumstances.

93.    Ms. Hernandez was a qualified employee and had known limitations related to her pregnancy and subsequent childbirth.

94.    Defendant subjected Ms. Hernandez to discriminatory treatment on the basis of her pregnancy, including but not limited to, failing to reasonably accommodate Ms. Hernandez's known limitations unlawfully terminating Ms. Hernandez on account of requesting and/or using reasonable accommodations.

95.    Defendant targeted Ms. Hernandez because she was pregnant and because of her known limitations related to her pregnancy. No similarly situated male employees or non-pregnant employees endured the discriminatory conduct that Ms. Hernandez was forced to endure.

96.    The discriminatory actions of the Defendant against Ms. Hernandez, as described and set forth above, constitute an adverse employment action for the purposes of the PWFA.   In subjecting Ms. Hernandez to an adverse employment action, the Defendant intentionally discriminated against Ms. Hernandez with respect to the compensation, terms, conditions, or privileges of her employment.

97.    As a direct and proximate result of the Defendant's intentional discriminatory conduct in violation of the PWFA, Ms. Hernandez has suffered

and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Ms. Hernandez has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages Ms. Hernandez accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

98.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Ms. Hernandez's rights under the PWFA, warranting the imposition of punitive damages, in addition to compensatory damages.

99.    The conduct of the Defendant deprived Ms. Hernandez of her statutory rights guaranteed under the PWFA.

100.   Ms. Hernandez further requests that her attorney's fees and costs be awarded as permitted by law.

**COUNT IV**
**42 U.S.C. § 2000gg-2(f)**
***PWFA Retaliation***

101.   Ms. Hernandez reincorporates the factual allegations in Paragraphs 17 through 61.

102.   The PWFA prohibits retaliation in any manner against a person who has opposed an unlawful discriminatory practice or act, or who has

participated in any investigation, proceeding, or hearing related to an unlawful discriminatory practice. 42 U.S.C. § 2000gg-2(f)(1).

103. The PWFA further prohibits an employer from coercing, intimidating, threatening, or interfering with any individual's exercise of any protected rights, or on account of any individual having exercised any protected rights. 42 U.S.C. § 2000gg-2(f)(2).

104. Ms. Hernandez had known limitations related to her pregnancy and subsequent childbirth, and was therefore protected under the PWFA.

105. Ms. Hernandez engaged in a protected activity under the PWFA when she informed Defendant of known limitations due to her pregnancy and requested reasonable accommodations on account of her known limitations.

106. In response to Ms. Hernandez asserting her protected rights under the PWFA, the Defendant retaliated against Ms. Hernandez.

107. Defendant retaliated against Ms. Hernandez and interfered with Ms. Hernandez's rights by engaging in conduct, including but not limited to, unlawfully terminating Ms. Hernandez's employment.

108. Defendant took the above-mentioned materially adverse actions, among others, against Ms. Hernandez because of her protected activities.

109. Any reasonable employee in Ms. Hernandez's position would be dissuaded from opposing discriminatory conduct if they knew that they would be subjected to the kind of treatment that Ms. Hernandez was forced to endure.

110.   Defendant's alleged bases for its adverse employment actions against Ms. Hernandez are pretextual and have been asserted only to cover up the retaliatory nature of Defendant's conduct.

111.   As a direct and proximate result of the Defendant's retaliatory conduct in violation of the PWFA, Ms. Hernandez has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Ms. Hernandez has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages Ms. Hernandez accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

112.   Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of the Ms. Hernandez's rights under the PWFA, warranting the imposition of punitive damages in addition to compensatory damages.

113.   The conduct of the Defendant deprived Ms. Hernandez of her statutory rights guaranteed under the PWFA.

114.   Ms. Hernandez further requests that her attorney's fees and costs be awarded as permitted by law.

## COUNT V
## § 760.10(1), Fla. Stat.
### *Sex Discrimination*

115.   Ms. Hernandez reincorporates the factual allegations in Paragraphs 17 through 61.

116.   The FCRA prohibits employment discrimination in an individual's terms, conditions, and privileges of employment because of the individual's sex or pregnancy. § 760.10(1)(a), Fla. Stat.

117.   Ms. Hernandez was an individual female and was therefore a protected class member.

118.   The elements of a prima facie case of disparate treatment are flexible and are tailored on a case-by-case basis to differing factual circumstances.

119.   Defendant subjected Ms. Hernandez to discriminatory treatment on the basis of her sex, including but not limited to, unlawfully terminating Ms. Hernandez's employment.

120.   Defendant targeted Ms. Hernandez because she was pregnant and because she exercised her maternity leave benefits. No similarly situated male employees endured the discriminatory conduct that Ms. Hernandez was forced to endure.

121.   The discriminatory actions of the Defendant against Ms. Hernandez, as described and set forth above, constitute an adverse

employment action for purposes of the FCRA.  In subjecting Ms. Hernandez to adverse employment actions, the Defendant intentionally discriminated against Ms. Hernandez with respect to the compensation, terms, conditions, or privileges of her employment.

122.   As a direct and proximate result of the Defendant's intentional discriminatory conduct in violation of the FCRA, Ms. Hernandez has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Ms. Hernandez has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages Ms. Hernandez accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

123.   Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Ms. Hernandez's rights under the FCRA, warranting the imposition of punitive damages in addition to compensatory damages.

124.   The conduct of the Defendant deprived Ms. Hernandez of her statutory rights guaranteed under the FCRA.

125.   Ms. Hernandez further requests that her attorney's fees and costs be awarded as permitted by law.

## COUNT VI
## § 760.10(7), Fla. Stat.
### *Retaliation*

126.   Ms. Hernandez reincorporates the factual allegations in Paragraphs 17 through 61.

127.   The FCRA prohibits retaliation in any manner against a person who has opposed a discriminatory practice, or who has participated in any investigation, proceeding or hearing related to an unlawful discriminatory practice. § 760.10(7), Fla. Stat.

128.   Ms. Hernandez was an individual female and was therefore a protected class member.

129.   Ms. Hernandez engaged in a protected activity when she informed Defendant of her pregnancy and exercised her maternity leave benefits.

130.   In response to Ms. Hernandez asserting her right to enjoy the same employment benefits as every other employee, the Defendant retaliated against Ms. Hernandez.

131.   Defendant retaliated against Ms. Hernandez by engaging in conduct, including but not limited to, unlawfully terminating Ms. Hernandez's employment.

132.   Defendant took the above-mentioned materially adverse actions, among others, against Ms. Hernandez because of her protected activities.

133.   Any reasonable employee in Ms. Hernandez's position would be dissuaded from opposing discriminatory conduct if they knew that they would be subjected to the kind of treatment that Ms. Hernandez was forced to endure.

134.   Defendant's alleged bases for its adverse employment actions against Ms. Hernandez are pretextual and have been asserted only to cover up the retaliatory nature of Defendant's conduct.

135.   As a direct and proximate result of the Defendant's retaliatory conduct in violation of the FCRA, Ms. Hernandez has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Ms. Hernandez has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages Ms. Hernandez accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

136.   Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of the Ms. Hernandez's rights under the FCRA, warranting the imposition of punitive damages in addition to compensatory damages.

137.   The conduct of the Defendant deprived Ms. Hernandez of her statutory rights guaranteed under the FCRA.

138.   Ms. Hernandez further requests that her attorney's fees and costs be awarded as permitted by law.

## **JURY DEMAND**

Plaintiff requests a jury trial on all issues to be tried.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests this Court enter judgment against Defendant for all damages suffered by the Plaintiff, including economic damages, lost wages (back pay and front pay) and benefits, liquidated damages, statutory damages, compensatory damages, emotional distress damages, interest, attorney's fees and costs, disbursements of action, and any other remedies (monetary and/or equitable) allowable by law as a result of the Defendant's conduct in violation of Title VII, the PWFA, and the FCRA.

Dated:  Miami, Florida
       April 10, 2024,

**DEREK SMITH LAW GROUP, PLLC**
*Counsel for Plaintiff*

*/s/ Kyle T. MacDonald*
Kyle T. MacDonald, Esq.
Florida Bar No.: 1038749
Derek Smith Law Group, PLLC
520 Brickell Key Drive, Suite O-301
Miami, FL 33131
Tel: (305) 946-1884
Kyle@dereksmithlaw.com